Veronica Asbach, Appellee, v. Chicago, Burlington
& Quincy Railway Company, Appellant.

1. **Evidence:** INTRODUCTION: WITNESSES: CREDIBILITY.   The fact
that, upon a second trial, after the plaintiff had closed her testimony,
and when a motion for a judgment for the defendant was about to be
made, a witness was called to testify as to the main issue in the plain-
tiff's case, and again when the defendant's testimony was partly in,
another witness was called by the plaintiff for the same purpose,
neither of which witnesses had been called on the former trial,
although they then lived in the same neighborhood as the plaintiff,
*held*, not to warrant the conclusion that the testimony of such witnesses
was false.

2. Pleading: DEMURRER: WAIVER OF ERRORS. Error in a ruling on a demurrer is waived by pleading over.

3. Evidence: AFFIDAVIT FOR CONTINUANCE: ADMISSIONS. An affidavit filed in support of a motion for a continuance is admissible in evidence against the party filing the same.

4. ———: TESTIMONY OF EXPERTS: ERROR WITHOUT PREJUDICE. Where a witness was called to testify as an expert, but declared that he was not an expert, and confined his testimony to the range of his own observation and experience, held, that the admission of his testimony was error without prejudice.

*Appeal from Decatur District Court.*—Hon. R. C. Henry, Judge.

Wednesday, October 5, 1892.

Action for the value of a horse killed on the defendant's railway. The cause was tried to the court without a jury, and from a judgment for the plaintiff the defendant appeals.—*Affirmed.*

*E. W. Curry*, for appellant.

*C. W. Hoffman* and *N. P. Bullock*, for appellee.

Granger, J.—I. The horse, the value of which the plaintiff seeks to recover, was found dead near bridge number 96 on the defendant's line of road, and a controverted question of fact in the case is whether or not it was killed by the defendant's train, or whether it walked onto said bridge and was killed by falling therefrom. It is urged that the judgment is without support in the evidence. The case was before this court on a former appeal, and because of the insufficiency of the evidence it was reversed. See 74 Iowa, 248. The evidence on the former appeal was held insufficient, because entirely circumstantial, and facts relied upon to prove the killing were quite as consistent with the theory that the animal went upon the bridge of his own volition, or

*Margin note: 1. EVIDENCE: introduction: witnesses: credibility.*

that he was frightened by something else than a train, and ran upon it, as with it; and it is there said: "Plaintiff, then, has not shown the cause of the injury." The evidence on this appeal is very different. A witness, W. C. Henderson, not a witness on the former trial, testifies that he was some three hundred yards east of there. Saw the horse on the track, and "saw the train strike him and knock him off the track." That he went down to within about fifty or seventy-five steps of the horse, and knows it was the plaintiff's horse. Another, N. P. Barnhardt, not a witness before, was a witness on the last trial, and testifies that he "was right behind the train when it whistled. Was going south alone. Was in the cut when it whistled." That he got off the south end of the bridge, where the horse was knocked off. "The train stopped a little while. The horse was lying in the ditch. It was a large, bay horse." That he crossed the bridge, and did not notice any blood on it. Did not see any marks on the horse. Did not examine him. That he did not "remember what month it was. That the horse that was killed was this same horse." The appellant assails with much force in some respects the testimony of these two witnesses. They had lived in this neighborhood since 1883, when the horse was killed, about which there had been much talk and litigation, and neither had made known the fact of his knowledge till on the eve of or at the last trial. It is urged that the statements of the two witnesses are absolutely inconsistent in some respects, which is true, and on the whole it is claimed that their testimony is unworthy of belief to the extent that the testimony in the case does not support the judgment. In this view of counsel we do not concur. It is true that there are facts not here set out that tend to impair the value of the testimony of these witnesses, but nothing to show that they are absolutely unworthy of belief.

It is strenuously urged that the time and manner of their being called to testify is indicative of something wrong, and as to one at least it is intimated in argument that if he was not "lying for fun," that "as a last desperate endeavor to win this case the men who have been behind it for so many years have sought and obtained this man's testimony for a consideration." The record shows that the plaintiff had closed her testimony, and when a motion was about to be made for a judgment for the defendant, the witness, Barnhardt, was introduced; and afterwards, when the testimony for the defendant was partly in, the court, on the application of the plaintiff, permitted her to introduce the witness Henderson as a part of her evidence in chief. There is nothing in such a state of facts to warrant us in saying that the witness, when introduced, testified falsely. Any irregularities or suspicious conduct of the plaintiff or her counsel during the trial in the presentation of her cause were under the observation of the district court, where every discrediting circumstance should have its due weight in fixing the value of the testimony, and there, better than here, can the proper effect be given to such matters. With it determined that we cannot exclude such testimony, as of no value, the record surely presents a case widely different from the previous record, and a state of the evidence forbidding our interference with the facts as found by the district court.

II. The original petition was filed in August, 1883, and stated as the negligence of the defendant a failure to fence its road, by reason of which the horse was killed. In April, 1889, by leave of court, she amended her petition; averring negligence in the manner of constructing bridge number 96, and the grade approaching the same. The amendment was by a second count. To the amendment there was a demurrer, on the ground that

2. PLEADING: demurrer: waiver of errors.

the cause of action therein stated was barred by the statute of limitations. The district court overruled the demurrer, and the defendant took leave to answer by pleading the statute of limitations. An assignment of error brings in question the correctness of the court's action on the demurrer, and the point is pressed in argument. If there was error, it was waived by pleading over; that is, by filing the answer. *Gray v. Lake*, 55 Iowa, 156; *Tootle v. The Phœnix Insurance Co.*, 62 Iowa, 362. There are many other rulings to the same effect.

III. At a previous term of the court one J. N. Ballou, an employee of defendant, filed an affidavit in its behalf in support of an application for a continuance because of the absence of one Manning, whom it desired as a witness.

3. EVIDENCE: affidavit for continuance: admissions.

A part of the affidavit is as follows: "That defendant expects to prove that Ed Manning was a conductor on defendant's road in June, 1883; that along in the latter part of June, 1883, the said Manning was conductor on passenger train running from Chariton to Grant City; that about June 28 the passenger train on which witness was conductor chased a horse on bridge 96, and that said horse was thrown off said bridge on the west side, and about twenty-five feet from the north end thereof; that the train pulled across the bridge and stopped, and witness, with others, got off and went back and looked at said horse; that said horse was a bay horse, weighing about twelve hundred to thirteen hundred pounds; that one Young was fireman on the same train, and would testify to the same state of facts; and affiant believes the said state of facts to be true, and knows of no other witness by whom the said facts would be so fully proven." The cause was continued, and at the trial the plaintiff, against objections by the defendant, was permitted to read in evidence the part of the affidavit

quoted. It was not error to admit the affidavit. In *Cross v. Garrett*, 35 Iowa, 480, the plaintiff, while in his closing argument to the jury, asked permission to read and comment on an affidavit for a continu-ance, filed by the defendant, which had not been offered in evidence. Against objection, the permission was granted, and the court said: "'The motion for continu-ance was a part of the record, and a proper matter of comment by the opposite party, without being formally offered in evidence." The facts shown by the affidavit were such as the defendant by filing it had asserted upon the record to be true. It was a part of the record of the defendant's own making, and it cannot now complain of its use.

IV. Harve Johnson gave evidence as follows, with objections as they appear: "I have handled horses. *Q.* Did you ever see a horse with good eyes that with his own volition walked out on an open bridge three hundred feet long and thirty-eight feet high? (Objected to as incompetent, not material, and not rebuttal. Objection overruled, and defendant excepts). *A.* No, sir. *Q.* Now, from your knowledge of the disposition of a horse, would you say that a horse with good eyes would walk out on an open bridge three hundred feet long and nearly thirty-eight feet high, with its own volition? (Same objection as above. Objection over-ruled, and defendant excepts.) *A.* I am not an expert. I don't know anything about horses, only what few horses I have; and from the disposition of my horses they would not do it." The ruling was erroneous. There is no attempt in argument to vindicate it. It is, however, urged that the error is without prejudice, and it seems to us that it is clearly so. The answers. show that the witness has no knowledge on the subject. He states no facts that could have weight with the court, nor does he disclose that he had knowledge

from which he could state such facts. He simply states that he has never seen a horse with good eyes walk on such a bridge, and he does not think, from the disposition of his horses, that they would. Such testi-- mony is of no weight, and could not influence the findings of the court. It is without prejudice. The district court may have believed the questions would lead to something different.

V. Complaint is made because the court permitted the witness Henderson to be called after the plaintiff had closed her testimony in chief and the defendant had introduced a part of its testimony. This was a matter within the court's discretion. There was no abuse of discretion nor prejudice. The judgment is AFFIRMED.