## CITY OF BLOOMINGTON *v.* WOODWORTH.

[No. 6,027. Filed June 6, 1907. Rehearing denied October 15, 1907.]

1. TRIAL.—*Instructions.—Damages.—Duty of Injured Person to Exercise Care in Curing Himself.*—It is the duty of a person, injured by the negligence of another, to use reasonable care in caring for himself after being injured; and damages sustained because of a failure to exercise such care cannot be recovered. p. 376.

City of Bloomington *v.* Woodworth—40 Ind. App. 373.

2. TRIAL.—*Instructions.—Applicability to Evidence.*—Instructions requested should be refused, where not applicable to the evidence in the case. p. 376.

3. SAME.—*Instructions.—Repetition.*—Instructions requested should be refused, where they are substantially embodied in those given. pp. 376, 377.

4. SAME. — *Instructions. — Municipal Corporations. — Care. — Presumptions.*—An instruction, in an action against a municipal corporation for injuries sustained because of a defective sidewalk, that plaintiff had a right to assume that such sidewalk was safe, but, that if the sidewalk was used in the night, care commensurate with the increased danger thereby caused should be exercised, is correct. p. 376.

5. SAME.—*Instructions.—Municipal Corporations.—Defective Sidewalks.—Knowledge.—Applicability to Evidence.*—An instruction, in an action against a municipal corporation for personal injuries caused by a defective sidewalk, that, if plaintiff knew of the defect, care commensurate with the known danger was required, is correct; but such instruction should not be given where there was no evidence of such knowledge. p. 378.

6. EVIDENCE.—*Inferences.—Knowledge of Defective Sidewalk.*—Evidence that plaintiff traveled over a sidewalk but once, and that her attention had never been called to the condition thereof, shows that she had no knowledge of the defect therein. p. 378.

7. TRIAL. — *Instructions. — Defective Sidewalks. — Tendency of Structure to Decay.*—An instruction, in an action against a city for damages caused by a defective sidewalk, that such city was under the duty not only to make its sidewalks safe but to keep them safe and that it must take notice of the tendency of timber to decay, is correct. p. 378.

8. SAME. — *Complaint.—Defective Sidewalk.—Evidence.—Bridges. —Variance.*—Where the complaint alleges that the damages were caused by a defective sidewalk, and the evidence shows that such sidewalk was made of wood and was extended over a ditch and that the sidewalk had banisters provided to prevent people from falling into such ditch, and that the defect was beyond the ditch, there is no variance. p. 379.

9. MUNICIPAL CORPORATIONS.—*Sidewalks.—What Are.*—A sidewalk does not cease to be such merely because it crosses a ditch. p. 380.

10. DAMAGES.—*Excessive.*—A verdict for $5,000 damages is not excessive, where plaintiff's ankle was dislocated, her fibula fractured, the ligaments connecting the tibia to the foot severed so that they would probably never reunite, and where plaintiff would suffer great pain therefrom for many years. p. 380.

From Monroe Circuit Court; *James B. Wilson,* Judge.

Action by Minnie Woodworth against the City of Bloomington. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*A. M. Hadley* and *Duncan & Batman,* for appellant.

*Miers & Corr,* for appellee.

COMSTOCK, C. J.—Appellee recovered judgment for $5,000 against appellant for damages received by reason of a defective sidewalk. The action of the court in overruling appellant's motion for a new trial is the only error discussed.

The complaint alleges that Seventh street in the city of Bloomington, Indiana, was much traveled between Morton and Madison streets; that the city had constructed and maintained a board sidewalk on the south side, just east of the railroad; that it had negligently allowed and permitted said sidewalk to become out of repair, and so to remain for a long time; that the city had knowledge of said defect; that the appellee was ignorant thereof; that she stepped into a hole in the sidewalk, without any fault or negligence on her part; that she fell and received the injuries for which suit is brought. The cause was put at issue by a general denial The evidence shows that said Seventh street runs east and west; that Morton street and Madison street run north and south; that there is a sidewalk on the south side of Seventh street between Madison and Morton streets, but no sidewalk on the north side of Seventh street; that between Madison and Morton streets the railroad tracks of the Chicago, Indianapolis & Louisville Railway cross Seventh street; that from the point where the railroad tracks cross Seventh street, eastward about thirty feet, there is a board sidewalk; that where this board sidewalk ends a brick pavement begins and extends eastward to Morton street; that this board sidewalk, at its extreme eastern end, crosses a ditch about five or six feet wide, which is walled up on each side; that the portion of the wooden structure which crosses this ditch is the so-called bridge; that there are banisters about fifteen or twenty feet long on both sides of the sidewalk, extending across the

so-called bridge and about twelve or fifteen feet along the sidewalk west of the west wall of said ditch; that about five feet from the west end of one of the banisters was a decayed plank with a hole in the board sidewalk which was several feet west of the west wall of the ditch over which the so-called bridge extended; that plaintiff got her foot in this hole and fell; that her ankle was dislocated, the ligaments torn and lacerated, and the end of the fibula fractured. Some of the witnesses spoke of the bridge as that part of the sidewalk and bridge included between the banisters.

The court refused to give to the jury instructions three, seven, fourteen and sixteen requested by appellant. Said instruction three was to the effect that any person injured by the negligence of another should use reasonable diligence to ascertain whether medical aid is required, and should use reasonable diligence and care to effect a cure, and he cannot recover damages for any injury which may result from a failure to exercise such care. The instruction is a correct expression of the law, but we are not referred to any evidence tending to show any negligence upon the part of appellee, which would make the instruction pertinent. It appears from the evidence that she was carried in a buggy to the doctor's office very soon after receiving the injury, and her foot and ankle dressed, after which she was taken to her home. She subsequently received treatment from the same physician.

Instruction seven was fully covered by instructions six, eight, eleven and twelve, given by the court at the request of appellant, and the giving of said instruction would have been a needless repetition.

Instruction fourteen is as follows: "I instruct you that a person passing along a sidewalk or over a bridge in a city of this State has a right to believe that the same is in a reasonably safe condition for the use of pedestrians, by night as well as by day, but in using the same in the night-time, where no light or imperfect light is furnished

by said city, then in that event I instruct you that it is the duty of such pedestrian, voluntarily passing along said street, to use care and caution commensurate with the increased danger and imperfect light or darkness, and to proceed along such sidewalk with due regard to any imperfections .or defects that may exist in the same.'' ˙Said instruction is fairly covered by instruction fifteen, given ·at appellant's request in the following language: ''It is the duty of a city in this State to keep its sidewalks in a reasonably safe condition, and pedestrians have a right to depend upon the fact that they will be so kept. But it is the duty of a pedestrian using a street, either in the night-time when it is dark, or when, from any other reason, he is unable to see such sidewalk over which he desires to pass, to use care and caution commensurate with the increased danger caused by the darkness, or from such other causes as may exist, and unless he so exercises his faculties in a degree commensurate with the surrounding dangers, then he cannot complain, and no liability shall attach to such city for any ˌdamage that may result from his failure so to do.''

Instruction sixteen, requested, would have told the jury that the plaintiff could not recover if, from the evidence, it appeared that she was guilty of contributory negligence. Contributory negligence was defined. In view of other instructions given, and particularly instructions eleven and twelve, given at the request of appellant, appellant could not have been injured by this action of the court.

Instructions five, six and seven, given at the request of appellee, are objected to. The general objection made to all of the instructions given, is that they ignore the question of appellee's knowledge of the alleged defect. Instructions five and six, in a general way, relate to the duty of a city to maintain in repair its sidewalks and to guard them if dangerous.

The seventh instruction is in the following language: ''If

the plaintiff was traveling on a defective sidewalk, as described in her complaint, and was using reasonable and ordinary care, as alleged in her complaint, and was injured by reason of said defective and unsafe condition, and was without fault on her part, and the city had knowledge of said defect, either actual or constructive, the city would be liable to her for such damage as she received.'' In behalf of appellant, it is argued that the law requires of a traveler only ordinary care when ignorant of danger, but when the traveler has knowledge of the danger the law requires care commensurate with the known danger. The proposition is sound; but, to apply to the case at bar, it should appear that there was evidence at least fairly tending to show that she had knowledge of the defective sidewalk. An examination of the record does not disclose such evidence, nor are we referred to any place where it may be found.

Appellee testified that she had been over the street or sidewalk in question but once before, and that was at night, and that her attention had never been called to the condition of the street or sidewalk. The only reasonable inference to be drawn from this evidence was that appellee had no knowledge of the defect.

Objection is not well taken to the following portion of instruction five: ''It is not enough to exonerate the city on account of rotten and insecure sidewalks, to show that they were originally well constructed and safe. . It is the duty of the city, not only to make her sidewalks safe in the first instance, but to use ordinary care to see that they are kept safe. * * * The city is chargeable with knowledge of the natural tendency of timber to rot and decay by the lapse of time and exposure to the elements, and it is its duty to use ordinary care to detect and guard against the same, and, if injury results by reason of rotten and insecure timber in a sidewalk, it is no excuse that the city officers, charged with the supervision of the streets and sidewalks, did not know that the timbers of such sidewalks were rotten

or insecure, if by ordinary care, in the discharge of their duties, such officers might have discovered the condition thereof in time to repair the same before such injury occurred.'' Instruction six, given at the request of appellant, is in the following language: ''A city is bound only to the exercise of reasonable prudence and diligence in the care of its streets and bridges, and the improvement and repair of its sidewalks and bridges, and it is not required to foresee and provide against every possible danger and accident that may occur. It is only required to keep its streets and sidewalks in a reasonably safe condition, and it is not an insurer against accidents.'' While a portion of said instruction five, relating to the sidewalk, was objectionable, yet no claim was made for the improper construction of the sidewalk, and no evidence was offered to show that it was not properly constructed or was not safe when constructed, and, the law being correctly stated in several instructions pertinent to the complaint, we do not believe the jury was misled by the error in the language pointed out.

In behalf of the appellant, it is insisted that there is a complete failure of proof; that the complaint charges a defective sidewalk and the evidence shows that the injury occurred on a bridge; that a bridge and a pavement are different, and that an action based on a defect in one cannot be maintained by proof of injury from the other, citing *Bordman* v. *Griffin* (1875), 52 Ind. 101; *Cleveland, etc., R. Co.* v. *Wynant* (1885), 100 Ind. 160; *Cincinnati, etc., R. Co.* v. *McLain* (1897), 148 Ind. 188; *Perry* v. *Barnett* (1879), 65 Ind. 522; *Thomas* v. *Dale* (1882), 86 Ind. 435; *Pennsylvania Co.* v. *Walker* (1902), 29 Ind. App. 285; *Southern R. Co.* v. *Roach* (1906), 38 Ind. App. 211. These cases all support the proposition that a plaintiff must recover, if at all, according to the allegations of his complaint.

There is evidence to show that from a point where the railroad track crosses Seventh street, eastward about thirty

feet,. there is a board sidewalk; that where said board side-walk ends,. a brick walk begins and extends east to Morton street; that this wooden sidewalk, at its extreme east end, crosses a ditch five or six feet wide.   This is what is referred to by witnesses as "the bridge." There are banisters along both sides of the sidewalk, for fifteen or twenty feet, extending across the bridge and twelve or fifteen feet along the sidewalk west of the west wall of said ditch.   The defect in the sidewalk was about six feet east of the west end of the banisters.   This is evidence to show that the defect was in that part of the sidewalk which was on the ground.   But a sidewalk does not cease to be a sidewalk when a portion of it is constructed across a ditch. *Challiss* v. *Parker* (1873), 11 Kan. 384.

It is insisted by appellant that the damages awarded are excessive.   Appellee was twenty-two. years old.   The physician who attended her testified that her ankle was dislocated; that "in making that dislocation it fractured the lower end of the fibula, which makes the large part of the ankle joint;" that the ligament joining the tibia to the foot was broken.   He characterized appellee's injury as very painful, from which she would suffer for a great many years, and that the torn ligaments would probably never reunite.

We find nothing in the evidence to induce the belief that the jury acted with prejudice, partiality, or corruption, and are not therefore warranted in disturbing the verdict. *Lauter* v. *Duckworth* (1897), 19 Ind. App. 535,. and cases cited.   We find no reversible error.

Judgment affirmed.